The Honorable Ed Garner State Representative 4 Pinehurst Way Maumelle, Arkansas 72113
Dear Representative Garner:
I am writing in response to your request for an opinion concerning certain transactions involving the Maumelle Public Facilities Board ("MPFB"), the Academics Plus Charter School ("School"), and the Maumelle Foundation for Education, Inc. ("Foundation").[1] As background for your particular questions, you recite various facts surrounding two existing lease agreements under which MPFB leases certain property to the School. The most pertinent facts relate to certain "Option Rights" that are held by the School under the leases. You describe these rights as follows:
 Under Lease 1, if the School exercises its option it can purchase a yellow modular building (the "Yellow Building") for the amount of the remaining debt. This purchase price would vary depending on the amount of the remaining debt at the time the option is exercised and could range between $1 and $350,000.00 but would always be less than fair market value of the property. If this option to purchase the *Page 2 
Yellow Building under the Lease 1 is exercised, then MPFB would enter into a lease with the School to lease the underlying real estate for 99 years at $1. (The MPFB wants to retain the underlying title to this parcel and therefore the lease for 99 years rather than a sale).
 Under Lease 2, if the School exercises its option, it can purchase the buildings and the land under those buildings (the "Fewell Property") for the amount of the remaining debt. The purchase price would vary depending on the amount of the remaining debt at the time the option is exercised and could range between $1 and $752,000.00 but would always be less than fair market value.
You further report that both leases contain a provision granting the School the right to assign the Option Rights to the Foundation, and that "[b]ecause the Foundation is a private entity versus a public entity, MPFB will consent to the assignment only if the Foundation has obtained an Attorney General's opinion that the enforcement of such rights by the MPFB with the Foundation will not constitute a gift to a private entity in violation of Article 12, § 5 of the Arkansas Constitution or violate any other provisions of Arkansas law." You ask, specifically:
 1. Can the MPFB consent to the School's assignment of its rights under Lease 1 and Lease 2 to a private 501(c)(3) entity (i.e. the Foundation) which would then sublease to the School?
 2. If such assignment is made and the options to purchase are exercised, can MPFB honor the option provisions in Lease 1 and 2 with the Foundation and sell the properties to the Foundation without violating Arkansas law including Article 12, § 5 of the Arkansas Constitution?
RESPONSE
I am neither authorized nor charged with responsibility to review these particular transactions, the legality or constitutionality of which will have to be evaluated under their own facts by the parties' retained counsel. I therefore regret to say that I cannot answer your questions. I can, however discuss some general principles of law that may bear on the questions presented. *Page 3 
I note as an initial matter that the Public Facilities Boards Act ("the Act") declares, inter alia, that "educational facilities . . . are essential to the physical and mental health, safety, and physical and economic welfare of the people of this state[,]" A.C.A. § 14-137-102(a)(9) (Repl. 1998), and it defines "educational facilities" in relevant part as "real, personal, and mixed property of any and every kind intended for use by an educational institution in furtherance of its educational program . . ." A.C.A. § 14-137-103(22) (Repl. 1998). The act further provides that a board organized under the act may be empowered, in relevant part, to "own, acquire, construct, reconstruct, extend, equip, improve, operate, maintain, sell, lease, contract concerning, or otherwise deal in or dispose of . . . education facilities . . ." A.C.A. § 14-137-106(a)(1) (Repl. 1998). The term "lease" includes "the granting of . . . purchase options for such prices and upon such terms and conditions as the board shall determine." A.C.A. § 14-137-103(16).
This office has previously opined regarding A.C.A. § 14-137-103(22) that "[n]either [that subsection] nor any other provision of the Act restricts the financing of educational facilities to public, as opposed to private, institutions." Op. Att'y Gen. 2002-137 at 2. My predecessor further opined that "the legislature has recognized that the promotion of all education, whether private or public, serves a public purpose[,]" and that the Act "should not preclude a private school from receiving the proceeds of public facilities bonds." Id. at 3-4.[2]
It therefore appears that a public facilities board such as MPFB has broad general power to enter into contracts such as the ones you have described, concerning property to be used by a private charter school or a private entity established to serve the school. Because both the School and the Foundation are apparently private entities, in my opinion there is no clearly discernible distinction in terms of whether the relevant law supports the particular transactions at issue. The issue will focus on the Board's grant of authority under the Public Facilities Boards Act, as well as the creating ordinance, see A.C.A. § 14-137-107
(Repl. 1998), and the question of whether the particular transactions fall within that authority.[3] *Page 4 
To the extent the inquiry focuses on the adequacy of the consideration for the conveyances, this is largely a question of fact that will turn on the specifics of the transaction(s). This office has previously opined, and I agree, that a public facilities board is not authorized to make a donation to a private entity, given that nowhere in the Public Facilities Boards Act do the terms "grant" or "donate" appear.See Op. Att'y Gen. 2006-025 (also citing Ark. Const. art. 12, § 5, which forbids any local governmental entity to "appropriate money for, or loan its credit to, any corporation, association, institution or individual.") The power of a public facilities board to transfer property without consideration to some other entity may also be bounded by the constitutional strictures of Ark. Const. art. 12, § 5.Cf. Op. Att'y Gen. (noting that art. 12, § 5 could possibly be broad enough to prohibit municipal corporations from appropriating "property" in addition to "money.") Additionally, as a general matter, real property transactions must be supported by adequate consideration. For a discussion of this issue, see Op. Att'y Gen. Nos. 2007-220 and 96-351. It is also well established as a general proposition that a municipal corporation may convey public property or an interest therein based upon consideration other than money. See, e.g., City of Blytheville v.Parks, 221 Ark. 734, 255 S.W.2d 962 (1953); Little Rock Chamber ofCommerce v. Pulaski County, 113 Ark. 439, 168 S.W. 848 (1914); Op. Att'y Gen. 2002-099. The question of whether the consideration for a particular transaction is adequate is a question of fact that can be determined only by an authorized finder of fact, taking into account all of the relevant information, such as the value of the property, the proposed use of the property, and the benefit that will accrue as a result of the conveyance. See Op. Att'y Gen. 2003-206. *Page 5 
I cannot determine the enforceability of the particular instruments at issue, as that is a question for the parties' retained counsel. The facts surrounding the transactions will determine the applicable legal principles and the constitutionality of the instruments in question.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:EAW/cyh
[1] Regarding these entities, you state that the MPFB was created by the City of Maumelle pursuant to the Public Facilities Boards Act, A.C.A. §§ 14-137-101 — 123 (Repl. 1998 and Supp. 2007); the School is an Arkansas non-profit corporation that was incorporated in 1999 to operate a charter school in the City of Maumelle; and the Foundation, which was formed to support the School, is in the process of seeking 501(c)(3) status. You further report that the School is in good standing with the State of Arkansas as a charter school, and that it has received a 501(c)(3) tax exempt status from the IRS.
[2] The remainder of the opinion is devoted to the question of whether, assuming the private school at issue is sectarian, the financing of such school's operations through the issuance of public facilities bonds might offend U. S. Const. amend. 1 and Ark. Const. art. 2, §§ 24 and 25, which are generally coextensive in prohibiting any government establishment of religion.
[3] Because you have not stated when the existing leases were entered, some mention should perhaps be made of the now expired Act 1738 of 2004, which imposed a temporary restriction on the contracting authority of school districts, charter schools, and education cooperatives. The act stated in pertinent part as follows:
 Beginning on July 16, 2003, through July 1, 2004, notwithstanding any other provision of law, no school board of any public school or any governing body of a charter school or an educational cooperative shall enter into any contractual or project obligation exceeding seventy-five thousand dollars ($75,000) or one percent of the district's total state and local revenues for additional base funding, as defined on lines 15 and 16 of the Department of Education's May 16, 2002 State Aid Notice, whichever is greater, for the purchase, sale, construction, improvement, or repair of equipment, facilities, motor vehicles, buildings, or real property sites without the prior written approval of the state board or the Director of the Department of Education as allowed in emergency situations.
Acts 2003, No. 1738, § 1, repealed by Acts 2007, No. 1573, § 45. *Page 1